**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

MANUEL DE JESUS HERNANDEZ
CHIRINOS, *et al.*,

     Plaintiffs,

     v.

AVENA CONTRACTING, LLC, *et al.*,

     Defendants.

Case No. 2:25-cv-418

**OPINION & ORDER**

Before the Court is the parties' joint motion for final approval of settlement.

ECF Nos. 24 (motion), 25 (memorandum). For the reasons stated herein, the motion

will be **GRANTED**.

**I.      BACKGROUND[1]**

This is a collective action lawsuit for unpaid overtime wages pursuant to the

Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*[2] ECF No. 1 ¶¶ 1–

4, 91–96. The plaintiffs are 68 current and former drywall laborers at the defendants

---

[1] The facts outlined here are taken from the complaint. ECF No. 1. However, the Court's recitation of the allegations should not be construed as admissions by the defendants.

[2] The plaintiffs also bring class actions for unpaid wages under Virginia state law (Counts II–III). *Id.* ¶¶ 5–6. Although FLSA settlements are subject to district court approval, settlements of the Virginia state law claims relevant to this case are not. Therefore, the Court's settlement approval analysis is limited to the plaintiffs' FLSA claims.

Avena Contracting, LLC and/or AR Precision, Inc., working at the Amazon Fulfillment Center, located in Virginia Beach, Virginia. *Id.* ¶¶ 19–30, 54–56; ECF No. 25 at 3.

The plaintiffs allege that they worked between 48 and 56 hours per week but were not paid an overtime rate of 1.5 times their standard hourly rate for hours worked over 40 each week. ECF No. 1 ¶¶ 34–44. The plaintiffs further allege that the defendants closely monitor and direct the day-to-day operations of the plaintiffs, who have no discretion over their duties, responsibilities, and daily tasks. *Id.* ¶ 53. The plaintiffs contend that the defendants direct, control, and supervise the plaintiffs, and have the ability to hire and fire, or modify the terms and conditions of employment. *Id.* ¶ 58.

As a result, the plaintiffs filed this action on July 9, 2025. ECF No. 1. The plaintiffs requested all unpaid wages and overtime damages due to the plaintiffs, liquidated damages equal to the unpaid overtime and/or unpaid wage compensation, attorney fees, and pre- and post-judgment interest. *Id.* at 18–19.

On January 22, 2026, the parties appeared for a settlement conference held before The Honorable Douglas E. Miller, and the parties agreed to settle the matter. Thereafter, the parties submitted a joint motion for settlement approval. ECF Nos. 24 (motion), 25 (memorandum). Under the settlement, the defendants have agreed to pay a gross sum of $60,000, including $500 service awards to lead plaintiffs Manuel De Jesus Hernandez Chirinos and Juan Roberto Rodriguez; attorney fees of $24,000;

and a proportionate share of the remaining settlement balance to each plaintiff, representing back wages and damages. ECF No. 25.

## II.    LEGAL STANDARDS

### A.    FLSA Settlement Approval

When parties seek to settle FLSA claims for unpaid wages, the district court must review the proposed settlement and determine if it is a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Gholston v. Smithfield Foods, Inc.*, No. 2:21-cv-194, 2022 WL 21842305, at *2 (E.D. Va. Nov. 2, 2022); *Minsterman v. S.L. Nusbaum Realty Co.*, No. 2:10-cv-303, 2011 WL 9687817, at *1 (E.D. Va. Jan. 21, 2011). "In deciding whether a bona fide dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case." *Duprey v. Scotts Co.*, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *16–17 (E.D. Va. Sept. 28, 2009)) (emphasis removed).

"There is a strong presumption in favor of finding a settlement fair." *Lomascolo*, 2009 WL 3094955, at *10 (quotation marks and citation omitted). When determining whether a FLSA settlement is fair and reasonable, district courts generally consider: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff; (5) the probability of the plaintiff's success on the merits; and (6) the amount of the settlement in relation to the potential

recovery. *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173–74 (4th Cir. 1975); *Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014)).

### B.    Attorney Fees

Under the FLSA, a district court may award the plaintiff "a reasonable attorney[] fee." 29 U.S.C. § 216(b). "[T]he fee applicant bears the burden of . . . documenting the appropriate hours expended and hourly rates. The applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The Fourth Circuit has outlined a three-step approach for courts to take when determining the appropriate award for attorney fees. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). First, the court should "determine the lodestar figure by multiplying the number of reasonable hours" by "a reasonable" hourly fee. *Id.* (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). To determine whether any portion of a fee is reasonable, the following twelve factors should be considered:

    (1)    the time and labor expended;

    (2)    the novelty and difficulty of the questions raised;

    (3)    the skill required to properly perform the legal services rendered;

    (4)    the attorney's opportunity costs in pressing the instant litigation;

    (5)    the customary fee for like work;

(6)    the attorney's expectations at the outset of the litigation;

(7)    the time limitations imposed by the client or circumstances;

(8)    the amount in controversy and the results obtained;

(9)    the experience, reputation and ability of the attorney;

(10)   the undesirability of the case within the legal community in which the suit arose;

(11)   the nature and length of the professional relationship between attorney and client; and

(12)   attorney fees awards in similar cases.

*In re Abrams & Abrams, P.A.*, 605 F.3d 238, 244 (4th Cir. 2010) ("Johnson factors").

Second, the court "must subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88 (citing *Robinson*, 560 F.3d at 244) (quotation marks omitted).

And third, the "court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (quotation marks and citation omitted). When "a plaintiff has achieved only partial or limited success," the lodestar "may be an excessive amount," even "where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436. The district court can "attempt to identify specific hours that should be eliminated, or it may simply reduce the [plaintiff's] award to account for the

limited success." *Id.* at 436–37. The court has "discretion in making this equitable judgment." *Id.* at 437.

## III.  ANALYSIS

### A.  Bona Fide Dispute

The Court must first determine if the settlement resolves a bona fide dispute over an alleged violation of FLSA provisions. *Minsterman*, 2011 WL 9687817, at *1 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1355). Such a dispute exists when an employee claims they are entitled to unpaid wages under the FLSA.

In this case, the parties disputed whether the plaintiffs were entitled to unpaid overtime wages under the FLSA. ECF No. 1 ¶¶ 91–96 (alleging that the defendants violated the FLSA by failing to pay the plaintiffs overtime wages at one-and-one-half times their regular rate of pay when they worked over 40 hours in one or more individual workweeks); ECF No. 16 (denying all allegations of wrongful or unlawful conduct and disclaiming any liability to the plaintiffs). Disagreements over rates of pay and entitlement to additional wages can constitute a bona fide dispute over a defendant's liability. *See Duprey*, 30 F. Supp. 3d at 408 (finding a bona fide dispute where "parties disagree[d] about Duprey's rate of pay and hours worked"). Therefore, this settlement resolves a bona fide dispute over FLSA provisions.

### B.  Reasonableness and Fairness

#### i.  *The extent of discovery*

To determine whether the settlement agreement constitutes a reasonable and fair resolution of the dispute, the Court first considers whether the parties had

adequate time to conduct sufficient discovery. Although the parties did not engage in formal discovery, the parties agree that "substantial discovery" was provided, including "wage and hour records voluntarily." ECF No. 25 at 9. This "allow[ed] the parties to understand the case, the range of damages, and to assess the potential varying outcomes of the case." *Id.* Further, the plaintiffs represent that they are "satisfied with the amount of data made available," and that they are satisfied "with their review of this data, and with their understanding of the potential damages available in this litigation." *Id.* Crediting the parties' representation that they "know the important facts affecting the case and have adequately assessed the respective benefits of the settlement and potential risks of continued litigation," *id.*, the Court finds that the parties have had opportunity to "fairly evaluate the liability and financial aspects of [the] case." *Lomascolo*, 2009 WL 3094955, at *11 (citation and quotations marks omitted). Accordingly, this factor weighs in favor of approving the settlement.

### ii.    *The stage of proceedings*

Next, the Court looks to the stage of the proceedings, including the complexity, expense, and likely duration of the litigation. The objective of this factor is to ensure that "proceedings advanced to a stage sufficient to permit the [p]arties and their counsel to obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to [] trial." *Lomascolo*, 2009 WL 3094955, at *11. That objective is met here.

7

When the parties reached a settlement agreement, this case had been pending for over six months. The parties have stated that they "had sufficient opportunity to evaluate their claims and defenses and engage in an arms-length settlement negotiation." ECF No. 25 at 10. The plaintiffs represent that the defendants "demonstrated good faith participation in the settlement negotiations by making information on wage and payroll data available to [the] [p]laintiffs for inspection and for inclusion into [the] [p]laintiffs' settlement damages model." *Id.* Additionally, without settlement, the parties faced proceeding with "complex, expensive, and protracted" litigation, including "disputes through class discovery" and challenges "in briefing on certification and decertification, liability, and damages." ECF No. 25 at 10. The parties appreciated that "trial would be a difficult, unpredictable, and costly undertaking" with risks to both sides—including the risk of "an uncertain and unpromised resolution of contested issues." *Id.*

Accordingly, the stage of proceedings weighs in favor of finding that the proposed settlement agreement is fair and reasonable.

### iii.    *Absence of fraud or collusion*

Third, the Court considers the absence of fraud or collusion in the settlement. The parties represent that the settlement agreement "[i]s not the product of undue influence, duress, overreaching, collusion, or intimidation," but rather was reached "after negotiations and analysis of evidence" that included "a [s]ettlement conference facilitated by Magistrate Judge Miller, who greatly assisted the [p]arties' in evaluating each [p]arty's[] strengths and weaknesses." ECF No. 25 at 10–11. The

8

parties represent that counsel analyzed the evidence in this case and "zealously represented their clients' interests and actively sought the best resolution" such that each plaintiff was able to participate in reaching an agreement. *Id.* at 11.

Looking beyond the parties' own representations, there is no evidence in the record that the settlement agreement is the product of fraud or collusion. *Lomascolo*, 2009 WL 3094955, at \*12 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.") (citation omitted). It is clear that both parties defended this action vigorously. Therefore, the Court finds that the absence of fraud or collusion further weighs in favor of settlement approval.

### iv.    *Experience of plaintiffs' counsel*

Fourth, the Court reviews the experience of plaintiffs' counsel. Attorneys Craig J. Curwood, Zev H. Antell, and Samantha R. Galina serve as plaintiffs' counsel in the instant matter. Attorney Curwood has been practicing law in the Commonwealth of Virginia since 1999 and served as the Chair of the Virginia Bar Association's Labor & Employment Law Section for the 2022 and 2023 terms. ECF No. 29-1 ¶¶ 4, 6. Attorney Antell is a partner at the firm of Butler Curwood, PLC. *Id.* ¶ 11. Attorney Galina is an associate attorney who has "presented and attended many presentations focused on employment law and litigation." ECF No. 29-2 ¶¶ 9–10. Attorneys Curwood, Antell, and Galina have "significant experience" representing clients in federal court matters involving employment law, including wage and hour disputes arising from violations of the FLSA. ECF No. 25 at 11. They "have served as [] counsel in complex individual and collective action settlements that have been approved in

this and other U.S. [d]istrict [c]ourts." *Id*. Additionally, plaintiffs' counsel have litigated against defense counsel in several matters. *Id*.

Upon review of their experience and credentials, the Court finds that plaintiffs' counsel possess the breadth of relevant experience and knowledge needed to litigate and resolve this matter in the best interests of the plaintiffs. Accordingly, this factor weighs in favor of approving the proposed settlement.

### v.   *The probability of the plaintiffs' success*

Fifth, the Court analyzes the probability of the plaintiff's success on the merits and whether the settlement agreement is adequate "in light of the strength" of the plaintiff's claims. *Flinn*, 528 F.2d at 1172. When the plaintiff's success appears uncertain or minimal, this factor weighs in favor of approving the proposed settlement. *See LaFleur*, 189 F. Supp. 3d at 595.

Here, the plaintiffs' success was uncertain. The plaintiffs "claim that they were not properly paid overtime and [were] misclassified as [i]ndependent contractors," while the defendants assert "that no such non-payment or underpayment occurred and that [the] [p]laintiffs were properly classified as [i]ndependent [c]ontractors." ECF No. 25 at 11–12. Further, the defendants argue that "neither were the employer, joint or otherwise" of the plaintiffs. *Id*. at 12. Accordingly, proceeding to trial would have required the plaintiffs to overcome these arguments, among other potential obstacles. And, even if successful in proving liability, the plaintiffs "would have faced additional disputes over whether liquidated damages should be awarded and the value of the misclassification." *Id*.

In light of the potential defenses and the risk to the plaintiffs' claims, the plaintiffs' success was not guaranteed. Consequently, this factor also weighs in favor of approving the proposed settlement.

### vi.    *The amount of the settlement in relation to potential recovery*

Finally, the Court considers the amount of the settlement in relation to the potential recovery. The FLSA allows recovery in the amount of unpaid minimum wages, overtime compensation, and/or lost wages, and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

The settlement agreement provides that each eligible plaintiff will receive a proportionate share of the net settlement fund of $35,000,[3] representing 20% back wages and 80% liquidated damages. ECF No. 25 at 3. The parties represent that "resolution now is warranted by the juxtaposition of the costs of protracted litigation against the possible damages available." ECF No. 25 at 12. Based on these representations, the Court is satisfied that the settlement amount is reasonable in relation to the plaintiffs' potential recovery. Thus, the Court finds that this factor supports approval of the proposed settlement.

---

[3] The settlement agreement provides for a gross sum of $60,000, out of which plaintiffs' counsel is to receive $24,000 representing attorney fees and the two lead plaintiffs are to each receive a $500 service award. ECF No. 25 at 3; ECF No. 25-1 at 1–3. Additionally, the defendants are tendering an additional $5,000 to cover the cost of settlement administration fees and employer side taxes. ECF No. 25 at 2, n. 3. The amount remaining after payment of attorney fees and service awards is $35,000.

11

Because of the strong presumption in favor of finding a settlement fair, and because all six factors weigh in favor of approval, the Court approves the payment of $35,000[4] to the plaintiffs.

Additionally, the Court approves as fair and reasonable the payment of a $500 service award to each of the two lead plaintiffs in this case "in recognition of [their] service in initiating this lawsuit on behalf of the class." ECF No. 25-1 at 3. That amount is fair in light of the value the lead plaintiffs provided to the class; Plaintiffs' counsel represents that the lead plaintiffs were "instrumental in the initiation of this suit, as well as throughout its successful prosecution," that they "spent time meeting with counsel, discussing both the facts and circumstances of the claims, and engaging in litigation strategies," and that "[w]ithout their efforts, this litigation may never have been brought." ECF No. 25 at 14.

The modest service awards also fall within the range of awards that have been approved in this district. *See, e.g., Stone v. SRA Int'l, Inc.*, No. 2:14-cv-209, 2015 WL 12748271, at *4 (E.D. Va. Mar. 20, 2015) (approving $12,500 service award to named plaintiffs and concluding "that the policy underlying the FLSA would appear to be served by providing a modest incentive to plaintiffs who take such initiative") (quotation marks and citation omitted); *Henderson v. Verifications Inc.*, No. 3:11-cv-514, 2013 WL 12146748, at *4 (E.D. Va. Mar. 13, 2013) (approving a $5,000 service

---

[4] This amount represents only the settlement fund to be proportionately distributed amongst all eligible plaintiffs. It does not include the service awards, which are discussed separately.

award to named plaintiff); *Pitt v. Kmart Corp.*, No. 3:11-cv-697, 2013 WL 12183659, at *3 (E.D. Va. May 24, 2013) (approving a $5,000 service award to the class representative). That the awards represent 1.6% of the total settlement fund—and only 3% of the total fund after accounting for attorney fees—further indicates their reasonableness.

Accordingly, the Court approves the total settlement fund of $35,000 excluding attorney fees, which are addressed immediately below, and service awards.

### C.    Attorney Fees

The proposed settlement provides for the payment of attorney fees in the amount of $24,000. ECF No. 25 at 3; ECF No. 25-1 at 4 (providing that class counsel will seek approval of attorney fees and costs of up to 40% of the total settlement amount, or $24,000). The defendants do not object to counsels' request for attorney fees, nor do they challenge plaintiffs' counsels' claimed hourly rates or number of hours billed. *See* ECF No. 25 at 4–6. The parties' agreement is owed some deference; however, the Court must ensure that the negotiated sum is fair and reasonable. S*ee Gholston*, 2022 WL 21842305, at *2 ("[T]he FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under the settlement agreement.") (quotation marks and citations omitted). The Court applies the three-step approach outlined by the Fourth Circuit to determine whether the attorney fees that the defendants have agreed to pay to

plaintiffs' counsel are reasonable. *See McAfee*, 738 F.3d at 88. The Court is satisfied that they are.

### i.    Lodestar Amount

The Court must first determine the lodestar amount, which is the reasonable amount of hours multiplied by a reasonable attorney fee. *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998). When assessing the reasonableness of fees, the twelve Johnson factors guide the Court's reasonableness assessment, though the Court "need not consider all twelve Johnson factors, only those relevant to the particular litigation." *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 364 (E.D. Va. 2021) (citations omitted).

Here, a total of 53.3 hours were billed at varying rates, for a total sum of $23,740.46 in fees.[5] In support of the reasonableness of the fee amounts and number of hours billed, the plaintiffs offer a declaration by two counsel in the case, Attorney Curwood and Attorney Galina, as well as a declaration by a disinterested counsel who practices employment law locally and is familiar with plaintiffs' counsel. ECF Nos. 29-1; 29-2; 29-3.

### a.    Reasonable Rate

The Court first determines whether the hourly rates requested by plaintiffs' counsel are reasonable. "The reasonable rate is 'to be calculated according to the prevailing market rates in the relevant community.'" *LaFleur*, 189 F. Supp. 3d at 596

---

[5] Plaintiffs' counsel submitted detailed billing reports for *in camera* review. Accordingly, references to billing details lack citation to electronic filings.

(quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). This "can be accomplished through affidavits from disinterested counsel, evidence of awards in similar cases, or other specific evidence that allows the court to determine 'actual rates which counsel can command in the market.'" *Project Vote/Voting for America, Inc. v. Long*, 887 F. Supp. 2d 704, 710 (E.D. Va. 2012) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)). "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994).

Counsel's hourly rates were as follows: $575 for Attorney Curwood, a founding member of the firm; $525 for Attorney Antell, a partner; and $375 for Attorney Galina, an associate. ECF No. 29-1 ¶¶ 9, 11, 14; ECF 29-2 ¶ 15. The average hourly rate of counsel, without accounting for hours expended, is $492. Courts in this district have approved similar rates for counsel experienced in FLSA matters, and rates on the higher end of the spectrum relevant to this case for partners. *Gholston*, 2022 WL 21842305, at *6 (finding an hourly rate of $500 "reasonable . . . especially" when counsel was "experienced in FLSA" actions) (citing *LaFleur*, 189 F. Supp. 3d at 597–98 (approving reduced hourly rates that ranged from $75 to $475)); *Carr v. Rest Inn, Inc.*, No. 2:14-cv-609, 2015 WL 5177600, at *4 (E.D. Va. Sept. 3, 2015) (finding that $500 per hour was a "reasonable" rate for an experienced FLSA attorney); *Swimways Corp. v. Tofasco of Am., Inc.*, No. 2:08-cv-481, 2009 U.S. Dist. LEXIS 122865, at *16–17 (E.D. Va. Sept. 3, 2009) (finding $675 to be a reasonable hourly rate for a partner attorney).

As noted *supra*, Part III.B.iv, the parties represent that plaintiffs' counsel are "highly experienced" in FLSA actions. ECF No. 25 at 11. Likewise, the declaration of disinterested counsel that the parties submitted represents that plaintiffs' counsel "have consistently been recognized by peers for their expertise in the area of wage [and] hour litigation." ECF No. 29-3 ¶ 6 (Coffield declaration). Accordingly, the experience and reputation of plaintiffs' counsel militates in favor of approval of their rates.

Further, district courts in the Fourth Circuit have approved higher rates in FLSA settlements "when all parties have agreed to them." *Donald Wilson v. Marlboro Plaza, LLC*, No. 8:22-cv-1465, 2026 WL 472059, at *4 (D. Md. Feb. 19, 2026) (approving an hourly rate of $750 based on agreement of the parties); *see also Guzman v. KP Stoneymill, Inc.*, No. 8:20-cv-2410, 2025 WL 756645, at *4 (D. Md. Mar. 11, 2025) (holding that higher rates are warranted when parties consent to such rates through settlement).

The customary fee likewise supports the reasonableness of counsels' hourly rates. *See in re Abrams & Abrams*, 605 F.3d at 248. Attorney Coffield represents that the "rate structure for [p]laintiffs' counsel . . . is, in my opinion, reasonable and represents the prevailing market rate for similarly skilled attorneys and staff engaged in similar work and cases in the Norfolk, Virginia metropolitan community, as well as the Eastern District of Virginia." ECF No. 29-3 ¶¶ 9, 12–13. (providing that Coffield's rate "is regularly adjusted based on market rates" and is presently $545 per hour).

16

Therefore, based on the experience of counsel, the prevailing fees in the relevant market, and the agreement of the parties, the Court finds that counsel's hourly rates of between $375–$575 are reasonable.

### b.    *Reasonable Hours*

Counsel spent a total of 53.3 attorney hours[6] on this matter over the course of approximately seven months.

Analyzing the time and labor expended, the Court finds that counsel billed a reasonable amount of time in this case in light of the relevant Johnson factors, including the time and labor expended, the novelty and difficulty of the questions raised, the skill required to perform the legal services, the experience and reputation of counsel, and the results obtained. *In re Abrams & Abrams, P.A.*, 605 F.3d at 246. Attorney Curwood billed 10 hours for his work in this matter, Attorney Antell billed 7.7 hours, and Attorney Galina billed 35.6 hours.

Counsels' hours are well documented with clear descriptions; they entail either individual, separate entries for each task, or block billed entries which designate the specific amount of time dedicated to each task. As previously noted, counsel are highly experienced and well regarded FLSA attorneys. Their work on this case included meeting with numerous plaintiffs accompanied by a translator; fact gathering and

---

[6] There are also six hours billed to Amber Bridgman for what appear to be administrative tasks, however these hours are not included the 53.3 hour total indicated on the billing report. Further, the hours are not billed at a particular rate, and instead seem to reflect the amount that it would have cost to perform the particular task, such as serving process or filing the complaint.

analysis; legal research; drafting pleadings; drafting discovery; reviewing damages and documentation; strategizing the development and resolution of the case; settlement negotiations; and drafting settlement documentation. ECF No. 25 at 13; ECF No. 29-2 ¶ 13. Accordingly, the work billed is directly related to litigation.

Although counsel does not address the novelty and difficulty of the issues in any detail, they generally represent that this case involved complex issues. ECF No. 25 at 10. Further, counsel represented that the parties "would likely have had disputes through class discovery and may have eventually challenged each other in briefing on certification and decertification, liability, and damages, not to mention the employment relationship between the Plaintiff and co-Defendants." *Id.* These "complex[]" questions would not resolve quickly if the parties chose to proceed to trial. *Lomascolo*, 2009 WL 3094955, at \*10. Additionally, counsel achieved a substantial positive outcome for the plaintiffs, many of whom will receive approximately $555.24 or more as part of this settlement.[7] ECF No. 25 at 2.

Upon due consideration of the record, agreement of the parties, and the relevant *Johnson* factors, the Court finds that a lodestar amount of $24,000 is reasonable. This amount encompasses $23,740.46 in attorney fees, based on the

---

[7] The parties have stated that 57 of the 68 plaintiffs will receive an average settlement payment of approximately $555.24 for unpaid wage related damages, and 67 of the 68 plaintiffs will receive $50.00 for misclassification damages. ECF No. 25 at 2. This is because 11 of the plaintiffs did not work in excess of 40 hours and thus do not have unpaid overtime claims, and one of the employees was classified as a W-2 employee, thus not eligible for misclassification damages. *Id.* at 2 n.1.

18

updated billing records, and also accounts for "significant additional fees" that plaintiffs' counsel expects to incur "through the notice and administration period as they respond to the needs of the settlement administrator and settlement members." ECF No. 25 at 5. In consideration of the billing records provided, the Court finds that the lodestar fee award is reasonable.[8] Because the proposed settlement pertains to both the plaintiff's state law and FLSA claims—and, therefore, none of the plaintiff's claims were unsuccessful—the Court will not exclude hours for unsuccessful claims. *See Hensley*, 461 U.S. at 440.

Finally, the Court considers the plaintiff's degree of success, which is the "most critical factor" in the reasonableness analysis. *Doe v. Chao*, 435 F.3d 492, 505 (4th Cir. 2006) (quotation marks and citation omitted). There is no "precise . . . formula" for this analysis, *Hensley*, 461 U.S. at 436; rather, courts consider the "overall degree of success in light of the litigation as a whole." *Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, 23 (4th Cir. 2019) (unpublished) (emphasis removed).

---

[8] The Court also notes that in the joint motion for approval of the settlement agreement, plaintiffs' counsel stated that their current lodestar was $18,380.00, but that the requested fee of $24,000.00 represented a modest multiplier of 1.3 to account for additional settlement administration fees. ECF No. 25 at 5. However, the billing report reflects that plaintiffs' counsel has now incurred additional fees of $23,740.46. These additional fees are due to counsel's compliance with the Court's order requiring them to provide additional materials—such as a declaration and detailed billing report—evidencing the reasonableness of the agreed-upon attorney fees, ECF No. 26, as well as working with the settlement administrator and class members, ECF No. 29-1 ¶ 13 n.1. The Court finds that these additional fees further supports the conclusion that the attorney fee amount sought is reasonable.

Counsel represents that the settlement "provides significant monetary relief to the [p]laintiffs now, rather than risking an uncertain and unpromised resolution of contested issues." ECF No. 25 at 10. Because the record does not indicate the damages sought, the Court is unable to measure the degree of the plaintiffs' success by comparing the amount of damages sought to the amount obtained through the settlement. *See Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005) (providing that the court must compare the amount of the damages sought to the amount awarded). However, counsel represents that the settlement agreement "will compensate [the] [p]laintiffs with 122.3% of all of their unpaid wages and an additional amount for misclassification." ECF No. 25 at 12. Accordingly, no reduction for degree of success is appropriate in this case, and the Court will approve the payment of attorney fees in the amount of $24,000.

## IV.   CONCLUSION

For the reasons stated herein, the joint motion for final approval of settlement (ECF No. 24) is **GRANTED**.

The settlement fund in the gross amount of $60,000 is **APPROVED**.

The Court further **APPROVES** plaintiffs' service award of $500 each (totaling $1,000) to Plaintiffs Manuel De Jeuss Hernandez Chirinos and Juan Roberto Rodriguez to be paid from the common fund.

Counsel's request for $24,000 in attorney fees and costs, also to be paid from the common fund, is likewise **APPROVED**.

20

The case is hereby **CLOSED**, except that the Court **RETAINS** jurisdiction to enforce the settlement agreement.

 **IT IS SO ORDERED**.

                                             /s/

 _____

 Jamar K. Walker
 United States District Judge

Norfolk, Virginia
March 23, 2026